# SUPREME COURT OF GEORGIA

Remittitur, Case No. S12Q0625                    Atlanta,  July 09, 2012

   The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

   NAIROBI COUCH v. RED ROOF INNS, INC., et al.

   This case came before this court upon a question certified by the Federal District Court and after consideration, it is ordered that the case be returned to that court with the instruction contained in the attached opinion, filed this day.

All the Justices concur, except Hunstein, P.J., and Benham, J., who dissent.


Lower Court Case No.
  110CV00045SCJ




## SUPREME COURT OF THE STATE OF GEORGIA

Clerk's Office, Atlanta  July 24, 2012

   I hereby certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
   Witness my signature and the seal of said Court hereto affixed the day and year last above written.

*Thrisa S Banna* , Clerk

In the Supreme Court of Georgia

Decided:   July 9, 2012

S12Q0625. COUCH v. RED ROOF INNS, INC., et al.

MELTON, Justice.

In this premises liability action,[1] the United States District Court for the

Northern District of Georgia has certified the following two questions to this

Court:

> (1) In a premises liability case in which the jury determines a
> defendant property owner negligently failed to prevent a foreseeable
> criminal attack, is the jury allowed to consider the "fault" of the
> criminal assailant and apportion its award of damages among the
> property owner and the criminal assailant, pursuant to OCGA §
> 51-12-33?

> (2) In a premises liability case in which the jury determines a
> defendant property owner negligently failed to prevent a foreseeable
> criminal attack, would jury instructions or a special verdict form
> requiring the jury to apportion its award of damages among the
> property owner and the criminal assailant, pursuant to OCGA §
> 51-12-33, result in a violation of the plaintiffs constitutional rights
> to a jury trial, due process or equal protection?

---

[1] The plaintiff in this case suffered a violent attack by unknown
criminal assailants while staying in a hotel and subsequently brought suit
against the owner of the hotel for failing to keep the premises safe.

For the reasons set forth below, we find that (1) the jury is allowed to apportion damages among the property owner and the criminal assailant and (2) instructions or a special verdict form requiring such apportionment would not violate the plaintiff's constitutional rights.

1. The rules of statutory construction, including reliance on ordinary word meanings, dictate that an assailant who evades hotel security to intentionally abduct, rob, and assault a hotel guest is, at the very least, partially at "fault" for the brutal injuries inflicted by the assailant on that guest. As a party at fault, such an assailant must be included with others who may be at fault, e.g., the property owner in a premises liability action, for purposes of apportioning damages among all wrongdoing parties. This is the clear directive of OCGA § 51-12-33, the intent of which is easily discernable from the straightforward text of the statute.[2] The portion relevant to this case comes into play at the close of

---

[2] The full text of the statute provides:

(a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to

2

his or her percentage of fault.

(b) Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

(c) In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

(d) (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

(e) Nothing in this Code section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly stated in this Code section.

3

evidence, specifically when a jury must decide whether the plaintiff has suffered any damages. OCGA § 51-12-33 addresses the two classes of people, the plaintiff(s) and tortfeasor(s), including non-parties, who are responsible for these damages and instructs the jury what to do in each scenario.

Subsection (a) addresses plaintiffs and deals with instances where the plaintiff is "to some degree responsible for the injury or damages claimed." The dominant purpose of this subsection is to instruct the jury on how and when to reduce "the amount of damages otherwise awarded to the plaintiff in proportion to [plaintiff's] percentage of fault." Here, the legislature is using "responsible" and "fault" interchangeably. "Fault" means that the damages are reduced, where appropriate, based on the degree to which plaintiff's actions contributed to the

------

(f) (1) Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.

(2) Where fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

4

damages.[3]

Next, subsection (b) addresses the full universe of tortfeasors, whether parties or not, and addresses what happens to "the total amount of damages to be awarded, if any, . . . after a reduction of damages pursuant to subsection (a)" related to plaintiff's responsibility or fault.  It is evident here that this section is designed to address "the total amount of damages" remaining at this point and the liabilities of all persons whom the jury has determined to be liable for the plaintiff's damages.[4]  It is axiomatic that juries, where authorized by law and supported by the evidence, are authorized to find that certain defendants may have been simply negligent, while other defendants acted intentionally.  Here, the full statutory instruction to the jury is enlightening.  The jury will be instructed to "apportion its award of damages among the persons who are *liable* according to the percentage of *fault* of each person." (Emphasis supplied.)  In

---

[3] If the plaintiff is 50 percent responsible or more, there is no recovery. OCGA § 51-12-33 (g).

[4] OCGA § 51-12-33 (c) provides: "In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." Therefore, all tortfeasors should be considered at the same time.

simplest terms, take the total amount of damages to be awarded to the plaintiff, identify the persons who are liable, and apportion the damages to each liable person according to each person's percentage of fault.  Just as in subsection (a) dealing with plaintiffs, "fault" in subsection (b) refers to the degree to which each tortfeasor's actions *contributed* to the damages.

This interpretation corresponds with the ordinary meaning of "fault," which includes intentional conduct. See OCGA § 1-3-1(b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter."). See also <u>Six Flags over Ga. II, L.P. v. Kull</u>, 276 Ga. 210, 211 (576 SE2d 880) (2003) ("In the absence of words of limitation, words in a statute should be given 'their ordinary and everyday meaning.'") (citations and punctuation omitted). Webster's Dictionary defines fault as "responsibility for wrongdoing or failure." <u>Webster's New Collegiate Dictionary</u> 414 (1981). Just a year  before OCGA § 51-12-33 was amended, the Court of Appeals had to decide what the word "fault" meant in a bond statute.  Pursuant to the fundamental rule of statutory construction discussed above, the court said that since "'fault' is not a term of art, but is a word of general use, it is to be given

6

its 'ordinary and everyday meaning.'" <u>A.A. Professional Bail v. State of Georgia</u>, 265 Ga. App. 42, 44 (592 SE2d 866) (2004) (interpreting OCGA § 17-6-31 (e)).  Looking to English and legal dictionaries, the court held that "fault" includes "conduct done wrongly or negligently" (id.) – exactly the way the Legislature would expect courts to interpret "fault" when it used the same term a year later in § 51-12-33. The assailants who attacked the hotel guest in this case most certainly have responsibility for that wrongdoing.

Furthermore, there is direct evidence from the statute, itself, that fault is not meant to be synonymous with negligence, but instead includes other types of wrongdoing which include intentional acts. OCGA § 51-12-33 (d) (1) states: "Negligence *or* fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty . . ." (Emphasis supplied.) This leaves no doubt that fault is not simply negligence,[5] and it shows the infirmity of the dissent's analysis, under which this statutory provision would have to be given the incorrect translation of "negligence or negligence." "[T]he fundamental rules of statutory construction ... require us to construe a statute

---

[5] In fact, the Legislature has given this indication throughout the Georgia Code. See, e.g., OCGA §§ 9-11-60 (d) (2); 15-6-62 (d); and 38-2-32 (c).

according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003). The statute uses "fault" synonymously with "responsibility" and "liability" for and "contribut[ion]" to the damages claimed, all words whose ordinary meaning encompasses intentional as well as negligent acts.[6] The statutory scheme is designed to apportion damages among "all persons or entities who contributed to the alleged injury or damages" – even persons who are not and could not be made parties to the lawsuit – a scheme that makes no sense if persons whose intentional acts that contributed to the damages are excluded.

In addition, there is clear evidence that, had the Legislature intended to exclude intentional acts from apportionment, it would have done so, as other state legislatures have done. OCGA § 51-12-32, which immediately precedes the apportionment statute, states that contribution is not applicable to "tortious acts [that] involve moral turpitude," which includes intentional torts. Crawford v.

_____

[6] Colorado's apportionment statute contains similar references to "negligence or fault," and the Supreme Court of Colorado has interpreted this phrase to include intentional torts as well as negligent acts. Slack v. Farmers Ins. Exchange, 5 P3d 280, 285 (Colo. 2000).

8

Johnson, 227 Ga. App. 548, 555 ( SE2d ) (1998). If the Legislature intended for an exclusion for intentional torts to apply to the apportionment statute, it would have expressly said as much. It did not, and the dissent is incorrect in its attempt to create an exclusion where there is no reason to believe that it exists. State v. Fielden, 280 Ga. 444, 448 (629 SE2d 252) (2006) ( "[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.").

When a word has a broad meaning, it is not natural to then specify that the term includes something that is already included in its meaning. In other words, a thing need not be defined into a class that already includes it. For example, theft is a type of crime, so it would be unusual to say "crimes, including thefts." In fact, when the Legislature lists only one or a few things that are ordinarily covered by a broad term, courts may conclude that the Legislature meant not to include the other things in the class that were not listed. This is the principle of "expressio unius est exclusio alterius" – "the express mention of one thing excludes all others." Instead, what a legislature normally does, if it wants to make sure that readers understand that a word with a broad ordinary meaning does not include something within that meaning, is to expressly define that thing out of the category. Here, the General Assembly showed that it did not intend

9

to implicitly exclude intentional torts from the scope of apportionment under OCGA § 51-12-33, because in the provision right before that, OCGA § 51-12-32, the General Assembly explicitly excluded intentional torts and other "tortious acts that involve moral turpitude" from the scope of contribution. These are two sequential provisions of the same Code.

An analysis of case law from other states interpreting other states' apportionment statutes is not actually necessary in this case. The ordinary meaning of "fault" is clear, as are the other textual indications in OCGA § 51-12-33, and Georgia courts do not need to look to the law of other states when the meaning of a Georgia statute is plain. Nevertheless, if the General Assembly had surveyed the nation's cases, they would have found apportionment cases from other states that interpret "fault" in different ways. However, in every instance, the decisions that say the word does not include intentional torts were interpreting statutes that specifically defined the word "fault" more narrowly than its ordinary meaning, except in Oregon, where a statute that replaced "negligence" with "fault" had prior judicial rulings and legislative history explaining that the change was not meant to expand the statute's scope. See Shin v. Sunriver Preparatory School, Inc., 111 P3d 762, 775-776 (Ore. App. 2005).

10

Georgia's statute has none of that.

On the other hand, as noted above, the Colorado Supreme Court has held that the undefined word "fault" has an ordinary meaning that includes intentional torts. Moreover, where state statutes define "fault" as broadly as the dictionary definition, the dissent cites no court in the country that has held that fault is limited to negligence. In fact, the dissent's survey of foreign case law badly misrepresents the holdings of the Arkansas and Maine cases it cites[7] and ignores the on-point Colorado decision. The results of a candid survey are unsurprising: when a word like "fault" is not defined in a statute, the basic rule used by courts across the country is to apply the word's ordinary, everyday

---

[7] Kubik v. Igleheart, 657 SW2d 545 (Ark. 1983), is a proximate cause rather than an apportionment case, and the opinion does not mention the Arkansas statute, Ark. Code Ann. § 16-64-122 (c), that the dissent alleges it interpreted. In fact, the Arkansas statute "calls for a comparison of fault, not just negligence, and fault encompasses intentional conduct." F.D.I.C. v. Deloitte & Touche, 834 FSupp 1129, 1145 n.26 (E.D. Ark.1992). And the Maine Supreme Judicial Court in McLain v. Training and Development Corp., 572 A2d 494 (1990), explains clearly that the broad definition of fault that the dissenting opinion quotes is the one applicable to defendants and, "[u]nder the broad sweep of that language, [the statute] would apply to the intentional tort of assault and battery committed by the defendant," id. at 496; however, the separate and narrower definition applicable to plaintiffs, which the dissent does not mention, does not apply to intentional torts. See id. at 497.

11

meaning.

The existence of a common law rule against apportionment to intentional tortfeasors does not alter this interpretation. Courts like to preserve the law they and their predecessors have made in deciding cases. But as long as legislation does not violate the Constitution, when the Legislature says something clearly – or even just implies it – statutes trump cases. As the Georgia Constitution says, "The General Assembly shall have the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state." See Ga. Const. of 1983, Art. III, Sec. VI, Par. I.

A statute does not need to expressly say, "this is intended to preempt the common law." The actual canon of statutory construction is "'that [statutes] in derogation of the common law . . . must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute.'" Delta Airlines, Inc. v. Townsend, 279 Ga. 511, 512 (614 SE2d 745) (2005) (citation omitted). Because the ordinary meaning of the word "fault" as used in OCGA § 51-12-33 includes intentional torts, and the other language used in the statute reinforces that meaning, construing OCGA § 51-12-33 to

apply to intentional torts requires no extension beyond its "plain and explicit terms."

The General Assembly's intent to displace the common law of apportionment is also demonstrated by subsection OCGA § 51-12-33 (g): "Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed." The common law of comparative negligence barred any recovery by a plaintiff who was equally or more at fault than the defendant(s) for the damages at issue. If OCGA § 51-12-33 were not meant to supplant the common law, there would be no need to restate that rule in the statute. But because "fault," as used without limitation in OCGA § 51-12-33, includes all wrongdoing, and subsections (a) through (c) direct the jury to apportion fault among all persons who contributed to the damages, without subsection (g) a plaintiff who was 50% or more at fault would still be able to recover. The Legislature needed to write that common-law rule into the statute for it to remain in effect, something that the Legislature did not do with respect to the common law of apportionment with intentional tortfeasors.

13

It should also be noted that there is already persuasive Georgia precedent on this issue. In Pacheco v. Regal Cinemas, Inc., 311 Ga. App. 224 (2) (b) (715 SE2d 728) (2011) (physical precedent only), the Court of Appeals ruled that the trial court correctly charged the jury on OCGA § 51-12-33 in a case where it was alleged that a property owner failed to protect a patron from a foreseeable criminal act. See also Cavalier Convenience v. Sarvis, 305 Ga. App. 141 (699 SE2d 104) (2011).

The purpose of the apportionment statute is to have the jury consider all of the tortfeasors who may be liable to the plaintiff together, so their respective responsibilities for the harm can be determined. After determination of any fault on the part of the plaintiff which might reduce the plaintiff's reward, OCGA § 51-12-33 (b) provides that "the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section [reflecting a plaintiff's responsibility], if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person." (Emphasis supplied.) One is liable to a plaintiff if he or she "is responsible or answerable in law." Black's Law Dictionary (9th Ed. 2009). Both negligent tortfeasors and

14

intentional tortfeasors are "answerable in law" to a plaintiff for damages caused to that plaintiff. By its plain language, OCGA § 51-12-33 (b) makes all persons responsible according to their respective percentages of responsibility. Therefore, as set forth above, proper statutory construction mandates a finding that "fault," as used in OCGA § 51-12-33, encompasses intentional torts.

The plaintiff in this case raises six additional policy-based arguments, none of which change the result. First, the plaintiff contends that requiring apportionment nullifies a property owner's duty to keep its premises safe. See OCGA 51-3-1. It does not. The duty remains even where damages are apportioned. Second, the plaintiff makes a related argument that apportionment allows property owners to avoid the consequences of their actions or inactions. However, property owners remain responsible for their actions and will be required to pay damages in proportion to their level of responsibility. Third, the plaintiff argues that the negligence of a property owner is derivative of a criminal assailant's conduct, and, as a result, the property owner must be held fully responsible, just as a principal is held responsible for the acts of an agent. This analogy, however, is misplaced, as the actions of a criminal assailant are wholly separate from any action or inaction of a property owner and there is no

15

respondeat superior. Fourth, the plaintiff argues that mandatory apportionment would provide a disincentive for a property owner to keep his premises safe. This argument fails because a property owner must still keep his premises safe or face potential liability for an amount of damages commensurate with its responsibility for a plaintiff's harm. Fifth, the plaintiff maintains that the injury she suffered is single, indivisible, and cannot be apportioned. This is unfounded. While the injury may be singular, the damages flowing from that injury may be apportioned by statute among the tortfeasors responsible for causing it. Sixth and finally, the plaintiff argues that the defendant property owner in this case cannot establish evidence to support any rational basis for apportionment. That, however, is a question of fact not relevant to answering the legal questions set forth in this case. See Polston v. Boomershine Pontiac-GMC Truck, Inc., 262 Ga. 616 (423 SE2d 659) (1992).

2. Jury instructions or a special verdict form requiring the jury to apportion its award of damages among the property owner and the criminal assailant, pursuant to OCGA § 51-12-33, would not result in a violation of the plaintiff's constitutional rights to a jury trial, due process or equal protection.

[A]ll presumptions are in favor of the constitutionality of an [A]ct

16

of the legislature and . . . before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this [C]ourt must be clearly satisfied of its unconstitutionality. Moreover, because statutes are presumed to be constitutional until the contrary appears, ... the burden is on the party alleging a statute to be unconstitutional to prove it.

(Citations and punctuation omitted.) <u>Dev. Auth. of DeKalb County v. State of Ga.</u>, 286 Ga. 36, 38 (1) (684 SE2d 856) (2009). The plaintiff in this case has not satisfied this burden.

With regard to the right to a jury trial, a jury applying OCGA § 51-12-33 does not abdicate any part of its normal function- it assesses liability, calculates damages, and names the tortfeasors who are responsible. With regard to due process, OCGA § 51-12-33 neither violates a plaintiff's right to due process because it is unconstitutionally vague or because it destroys a vested property right. As discussed at length above, the statutory scheme is discernable, and it gives juries adequate guidance in assessing and apportioning damages among responsible persons. It also preserves a plaintiff's right to pursue a judgment against all tortfeasors responsible for causing harm. Furthermore, OCGA § 51-12-33 does not conflict with OCGA § 51-12-31, a statute which expressly does not apply where OCGA § 51-12-33 applies. Indeed, OCGA § 51-12-31

17

expressly provides that, "*[e]xcept as provided in Code Section 51-12-33*, where an action is brought jointly against several persons, the plaintiff may recover damages for an injury caused by any of the defendants against only the defendant or defendants liable for the injury." (Emphasis supplied.) See also McReynolds v. Krebs, 290 Ga. 850 (725 SE2d 584) (2012) (With respect to the right of contribution pursuant to OCGA § 51-12-32, "OCGA § 51-12-33 (b) flatly states that apportioned damages 'shall not be subject to any right of contribution . . .' [and OCGA § 51-12-32] obviously cannot trump the rules set forth in OCGA § 51-12-33 because it begins with the phrase, '[e]xcept as provided in Code Section 51-12-33.'") . Finally, with regard to equal protection, as set forth above, the statute is certainly supported by a rational basis of apportioning damages among all tortfeasors responsible for harming a plaintiff in an efficient and orderly manner.

Questions answered. All the Justices concur, except Hunstein, P.J., and Benham, J., who dissent.

18

S12Q0625. COUCH v. RED ROOF INNS, INC., et al.

BENHAM, Justice, dissenting.

Because I believe there is more to statutory construction when Georgia's common law is at issue than looking through the dictionary of one's choice, I cannot join the majority opinion. While I agree with the majority that the word "fault" *may* encompass intentional conduct, I cannot agree with the majority when it opines that the General Assembly intended to eviscerate more than a century of Georgia's common law simply by using "fault" in OCGA § 51-12-33. Because I believe our case law prevents us from construing a statute to be at odds with the common law without an express statement of such an intent from the General Assembly or by necessary implication, I dissent.

"Apportionment of damages is one of the most difficult aspect of damages law, both in concept and in application." Link and Hertz, *Georgia Law of Damages*, § 11:1 (2010-2011 ed.). "[A]pportionment of intentional and negligent fault is an issue of critical significance" – "the main locus of state comparison controversies..." ( Ellen M. Bublick, *The End Game of Tort Reform: Comparative Apportionment and Intentional Torts*, 78 Notre Dame L. Rev. 355,

358, 387 (2003)), and "The most controversial expansion of comparative fault has been when it is applied to torts that are intentional in nature." J. Tayler Fox, *Can Apples be Compared to Oranges? A Policy-Based Approach for Deciding Whether Intentional Torts Should be Included in Comparative Fault Analysis*, 43 Val. U. L. Rev. 261, 274 (2008).

OCGA § 51-12-33, as amended in 2005, provides that a plaintiff seeking damages for injury to person or property is not entitled to receive any damages if the plaintiff "is 50 percent or more responsible for the injury or damages claimed." OCGA § 51-12-33(g). In an action against one or more persons for injury to person or property, the trier of fact "determine[s] the percentage of fault of the plaintiff" and the judge reduces the amount of damages awarded to the plaintiff "in proportion to his or her percentage of fault." OCGA § 51-12-33(a). When an action is brought against more than one person for injury to person or property, OCGA § 51-12-33(b) requires the trier of fact to apportion its award of damages among the persons who are liable "according to the percentage of fault of each person," after the reduction of damages required by subsection (a). In its assessment of "percentages of fault," the trier of fact is to consider "the fault of all persons or entities who contributed to the alleged injury or damages,"

2

regardless of whether the person or entity is or could be named as a party to the lawsuit. OCGA § 51-12-33(c). The "negligence or fault" of a non-party shall be considered if the plaintiff entered into a settlement agreement with the non-party or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially "at fault." OCGA § 51-12-33(d)(1). Damages apportioned under § 51-12-33 are the liability of each person against whom they are awarded, are not a joint liability among the persons liable, and are not subject to any right of contribution. OCGA § 51-12-33(b).

Like many of its sister states, Georgia's statute speaks in terms of apportioning damages among those liable according to the percentage of "fault" of each person. OCGA § 51-12-33(b). Unlike most other states, however, Georgia's statute provides no definition for "fault," a key term in the statutory process for apportioning damages. Oregon's comparative fault statutory scheme[1] also does not contain a definition of "fault," and the Oregon appellate courts have "gleaned" that fault, as used in the statute, "includes 'tortious conduct ... in which contributory negligence is an appropriate defense'" and therefore does not include intentional misconduct since contributory negligence was not a defense

_____

[1]Ore. Rev. Stat. §§ 31.600, 31.605.

to willful or intentional misconduct.  <u>Shin v. Sunriver Prepatory School</u>, 199 Or.

App. 352, 376 (111 P3d 762) (Or. App. 2005).  Other states which have enacted

comparative fault statutes have statutorily defined "fault" as limited to acts of

negligence,[2] to include reckless acts in addition to negligence,[3] to expressly

exclude intentional conduct,[4] and to expressly include intentional acts.[5]  State

appellate court decisions also reflect differences of opinion as to what "fault"

means: Arkansas's statute defines "fault" to include a litany of conduct[6] and has

been construed as not including intentional conduct (<u>Kubik v. Iglehart</u>, 280 Ark.

---

[2]See, e.g., "all actions brought to recover damages for negligence" (10 Del. C. § 8132 (2012), "caused by the negligence of another" (S.D. Codified Laws § 20-9-2 (2011))

[3]See, e.g., "one or more acts or omissions that are in any measure negligent or reckless" (Iowa Code Ann. § 668.1 (2012), (Minn. Stat. 604.01 (2012).

[4]See e.g., "[f]ault shall not include any tort which results from an act or omission committed with a specific wrongful intent"(Miss. Code Ann. § 85-5-7(1) (2011)); "there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence, including, but not limited to, intentional, wanton, or reckless misconduct...." (Conn. Gen. Stat. Ann. § 52-572h(o) (2012)).

[5]See, e.g. "'fault' includes acts or omissions that are in any measure negligent, reckless, or intentional..." (Alaska Stat. § 09.17.900 (2012); "'fault' includes an act, an omission, conduct, including intentional conduct, breach of warranty, or breach of a legal duty, or any conduct that could give rise to the imposition of strict liability that is a proximate cause of damage...." (Mich. Comp. Laws Ann. § 600.6304(8) (2012); "'Fault'... means an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others." (Ind, Code Ann. § 34-6-2-45 (2012).

[6]Ark. Code Ann. § 16-64-122(c) defines "fault" as "any act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a proximate cause of any damages...."

4

310 (657 SW2d 545) (1983)), while Arizona's definition containing much of the same conduct[7] was construed to include intentional conduct. <u>Hutcherson v. City of Phoenix</u>, 192 Ariz. 51, (961 P2d 449) (1998).  Maine's statutory definition that fault includes "negligence, breach of statutory duty or other act or omission that gives rise to a liability in tort..."[8] was construed as not authorizing a reduction of liability when a defendant's conduct is intentional (<u>McLain v. Training and Dev. Corp.</u>, 572 A2d 494 (Me. 1990)),[9] and Utah's statutory language ("any ...act ... proximately causing or contributing to injury or damages")[10] was construed as including intentional acts in the comparative fault scheme.  <u>Field v. The Boyer Co.</u>, 338 Utah Adv. Rep. 10 (952 P2d 1078, 1080)

---

[7]"'Fault' means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification or abuse of a product." Ariz. Rev. Stat. § 12-2506(F) (2012).

[8] Maine Rev. Stat. Ann. tit. 14 § 156 (2011).

[9]The Maine court reasoned :"For the comparative fault statute to apply, the plaintiff's negligence to be compared with the defendant's intentional tort must constitute "fault" as defined under [the statute] to be an 'act or omission [of the plaintiff] which ... would, apart from th[is] section, give rise to the defense of contributory negligence.'[Cit.] *In the case at bar the question thus becomes whether, at common law, contributory negligence was a defense to an intentional tort. ...We have never recognized contributory or comparative negligence as a defense to the intentional tort of assault and battery and we decline to do so now."* Id. at 496-497 (emphasis added).

[10]Utah Code Ann. § 78-27-37(2) (1998).

5

(1998).[11]

In the absence of a statutory definition, it falls to this Court to determine what the General Assembly intended by its use of the word "fault." "[T]he cardinal rule to guide the construction of law is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose.' [Cit.]." City of Jesup v. Bennett, 226 Ga. 606 (2) (176 SE2d 81) (1970). The statement of legislative intent contained in an uncodified section of the 2005 Tort Reform Act does not clarify what the General Assembly intended in its use of the undefined term "fault."[12]   However, we can glean from the legislative use of the disjunctive

---

[11]The Louisiana Supreme Court ruled that La. C. C. art. 2323 adopted the substantive principle of comparative fault and "left the particulars of its application for the courts to decide." Veazey v. Elmwood Plantation Associates, 650 So2d 712, 716 (La. 1994). The court went on to hold that Louisiana's comparative fault law was broad enough to encompass the comparison of negligent and intentional torts, but that policy considerations led to the conclusion that such comparison was not appropriate between the negligent property owner and the perpetrator of a criminal attack. Id. at 720. See Turner v. Jordan, 957 SW2d 815 (Tenn. 1997). Tennessee has no comparative negligence statute, so its body of comparative liability law has developed through case law, and for policy reasons it does not permit the comparison of intentional conduct with that of negligent conduct where the intentional conduct is the foreseeable risk created by the negligent conduct.

[12]In the uncodified section, the General Assembly stated it was enacting the legislation in reaction to a "crisis affecting the provision and quality of health care services" in Georgia due to the difficulty Georgia health-care providers were having in obtaining affordable liability insurance, which could result in an adverse impact on the health and well-being of Georgia's citizens. 2005 Ga. L. § 1, pp. 1-2. The Act's provision of "certain civil justice and health care regulatory reforms were to "promote predictability and improvement in the provision of health

6

("[n]eligence or fault") in § 51-12-33(d)(1) that the General Assembly intended "fault" to cover more than mere negligence. The question then becomes – how much more? How far along the spectrum of culpability does "fault" run? Did the General Assembly intend for it to cover strict liability? Breach of warranty? Product liability? Wilful or wanton conduct? Intentional conduct?[13]

It is a fundamental principle of statutory construction that we give words their plain and ordinary meaning. Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003); OCGA § 1-3-1(b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter...."). A legal scholar has described "fault" as "the mirror of our times: ... a fluid term definable only with respect to its surroundings." F. Stone, *Tort Doctrine, 12 La. Civil Law*

---

care services and the resolution of health care liability claims and will thereby assist in promoting the provision of health care liability insurance by insurance providers." Id. The General Assembly found that "certain needed reforms affect not only health care liability claims but also other civil actions and accordingly provide[d] such general reforms...." Id.

It is apparent the legislature enacted the Tort Reform Act of 2005 to allay the perceived crisis in the provision and quality of health care brought about by the difficulty health-care providers were experiencing in obtaining affordable liability insurance, and to make reforms that affected other civil actions in addition to health care liability claims.

[13]In this vein, I find myself facing the same dilemma expressed by the dissent in Slack v. Farmers Insurance Exchange, 5 P3d 280, 289 (Colo. 2000) (Because "fault" is capable of being understood in more than one sense, we must employ other rules of statutory construction to determine whether this language was intended to include intentional tortfeasors).

*Treatise § 60* (1994 Supp.), quoted in <u>Veazey v. Elmwood Plantation Associates</u>, 650 So2d 712, 717-718 (La. App. 1994). The summary of comparative fault statutes found above bears out this observation. See pp. 2-4, supra. Our Court of Appeals, construing "fault" as it is used in OCGA § 17-6-31(e) (bond forfeiture in criminal proceedings "shall not apply where the prosecuting attorney's failure to try the charges is due to the fault of the principal), concluded that "fault" was not a word of art and was to be given its "ordinary and everyday meaning." <u>A.A. Professional Bail v. State of Ga.</u>, 265 Ga. App. 42, 44 (592 SE2d 866) (2004). That court found the "everyday" meaning in Webster's Third New World Dictionary, which defined "fault" as "failure to have or do what is required...; something done wrongly[;]" and Black's Law Dictionary, which defined "fault" as "negligence; an error or defect in judgment or of conduct; any deviation from prudence, duty, or rectitude." Id. These definitions and the statutory definitions of "fault" enacted by other state legislatures, lead me to conclude that "fault" can cover a wide spectrum of conduct, including but not mandating, intentional conduct, and leave me unable to say "its scope and meaning are palpable and unmistakable...." <u>Hightower v. State</u>, 72 Ga. 482 (1) (1884). Insofar as comparative fault is concerned, we face the same dilemma –

8

did the General Assembly intend 'fault" to encompass intentional behavior as well as negligent behavior?

I next turn to an oft-used presumption in construing a statute: "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection with and in harmony with the existing law, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts." Thornton v. Anderson, 207 Ga. 714, 718 (64 SE2d 186) (1951). See also O'Neal v. State, 285 Ga. 361, 362 n.3 (677 SE2d 90) (2009); State v. Kachwalla, 274 Ga. 886, 889 (561 SE2d 403) (2002); State v. Tiraboschi, 269 Ga. 812, 814 (504 SE2d 689) (1998); Avnet v. Wyle Laboratories, 263 Ga. 615, 619-620 (437 SE2d 302) (1993). At the time the tort reform acts were passed, both in 1987[14] and 2005, the common law prohibited the use of intentional conduct in a comparative analysis in tort. At common law, any negligence on

---

[14]In the Tort Reform Act of 1987 (1987 Ga. L. 915, § 8), the General Assembly provided that, in an action brought against more than one person and where the plaintiff was to some degree responsible for the injury or damage, the trier of fact had the option to apportion damages among those who were liable and whose degree of fault was greater than that of the plaintiff, and the apportioned damages were not a joint liability and were not subject to any right of contribution.

9

the part of the plaintiff which concurred in proximately causing the injury was an absolute bar to the plaintiff's recovery, but the bar did not exist if the defendant acted wilfully and wantonly in inflicting the injury. Southland Butane Gas. Co. v. Blackwell, 211 Ga. 665, 666-667 (88 SE2d 6) (1955). See Macon & Western R. Co. v. Johnson, 38 Ga. 409, 431-432 (1868). "When the defendant's wrongful act was not only a failure in diligence but was willful or so grossly negligent as to be wanton and reckless[,]" the plaintiff's failure to exercise ordinary care did not defeat a recovery. The Central Railroad & Banking Co. v. Newman, 94 Ga. 560 (Hn. 2) (21 SE 219) (1894). Stated otherwise, the defendant's intentional conduct could not be used to reduce or eliminate liability to the plaintiff. The harsh rule of common-law contributory negligence that completely barred a plaintiff's recovery of damages was alleviated when the General Assembly replaced contributory negligence with a form of comparative negligence in which the negligence of the plaintiff was compared with the negligence of the defendant(s) and, if less than that of the defendant(s), could serve to reduce the plaintiff's recovery of damages in proportion to the degree of fault attributed to the plaintiff. Bridges Farms v. Blue, 267 Ga. 505 (480 SE2d 598) (1997); Union Camp Corp. v. Helmy, 258 Ga.

10

263 (367 SE2d 796) (1988). But, again, a defendant's intentional conduct

precluded the application of comparative negligence. See Flanagan v. Riverside

Military Academy, 218 Ga. App. 123, 126 (460 SE2d 824) (1995) (intentional

tort); Intl Assn.of &c. Iron Workers. Local 387 v. Moore, 149 Ga. App. 431 (11)

(254 SE2d 438) (1987) (wilful tort).

It is the law today, as it was in 1987 and 2005, that "[t]he common-law

rules are still of force and effect in this State, except where they have 'been

changed by express statutory enactment or by necessary implication.' [Cit.]."

Fortner v. Town of Register, 278 Ga. 625 (1) (604 SE2d 175) (2004). See also

Humphreys v. State, 287 Ga. 63 (4) (694 SE2d 316) (2010); Bragg v. Oxford

Const. Co., 285 Ga. 98, 100 (674 SE2d 628) (2009); Avnet v. Wyle Lab, 263 Ga.

615 (2) (437 SE2d 302) (1993); Robeson v. International Indemnity, 248 Ga. 306

(1) (282 SE2d 896) (1981). In Fortner, this Court held that the common-law rule

had not been preempted by new legislation because the General Assembly, in

enacting the new law, did not expressly preempt the law, having stated only that

it was changing prior statutory law. 278 Ga. at 626. Similarly, both the Tort

Reform Act of 2005 and the Tort Reform Act of 1987 were enacted to change

prior statutory law and neither act included an express preemption of the

11

common law that prohibited a comparative analysis based on intentional conduct. See Ga. L. 2005, p. 1; Ga. L. 1987, p. 915-916. Furthermore, it is not a necessary implication from the General Assembly's use of the undefined term "fault," which can, but does not necessarily include intentional conduct, that the legislature intended to change Georgia's common law. See Lefkoff v. Sicro, 189 Ga. 554, 565 (6 SE2d 687) (1939) (examine language of statute for "necessary implication"), *overruled in part on other grounds*, Drewry v. State, 208 Ga. 239, 243 (65 SE2d 916) (1951). See also Humphreys v. State, 287 Ga. 63 (4) (694 SE2d 316) (2010). I conclude that OCGA § 51-12-33 does not preempt the common-law rule that intentional conduct is not a part of a comparative analysis of damages in tort.

The majority sees support in its position in the legislative amendment to OCGA § 51-12-32. See Maj. Op. at 7.[15] I see the history of that statute as supportive of my position. The language of exception in § 51-12-32 upon which the majority shines light ("where a tortious act does not involve moral turpitude") was added to the statute, not as part of the Tort Reform Act of 1987 or of 2005,

---

[15]The statute was most recently amended in 1987, when the legislature added the introductory phrase, "Except as provided in Code Section 51-12-33...."

12

but in 1966 (Ga. L. 1966, p. 433, § 1) and, rather than being a refutation of the common law, actually brought Georgia one step closer to the common law it had statutorily eschewed in the nineteenth century when the General Assembly enacted Section 3008 of the 1863 Code (now subsection (b) of § 51-12-32). Under common law, a joint tortfeasor had no right of contribution from other joint tortfeasors, and the 1863 Code created a substantive right of contribution. See F. H. Ross & Co. v. White, 224 Ga. 324 (2) (161 SE2d 857) (1968). The General Assembly's statutory limitation of the right of contribution from joint tortfeasors to only those situations in which there was no moral turpitude/intentional conduct is a recognition of the common-law principles I espouse – intentional conduct is not a part of the comparative analysis of damages in tort. Thus, while the General Assembly had to make an express statement in § 51-12-32 to *return* to the common-law principle, it need not make such an express statement in § 51-12-33 to *continue* adherence to the common law that prohibits intentional conduct from being a part of comparative analysis of damages in tort. As Fortner and related cases make clear, it is a *departure* from the common law that must be stated expressly or by necessary implication.

A related rule of statutory construction requires that a statute in derogation

13

of the common law be construed strictly by the courts. <u>Tampa Inv. Group v.</u>
<u>Branch Banking and Trust Co.</u>, 290 Ga. 724 (1) (723 SE2d 674) (2012);
<u>Stanfield v. Glynn County</u>, 280 Ga. 785 (2) (631 SE2d 374) (2006).  Since, as
shown above, "fault" is a term that can be both narrowly and expansively
applied, it must be strictly construed when used in a statute in derogation of the
common law.  Strict construction precludes construing "fault" to up-end the
common law.

In sum, the term "fault," as used by the General Assembly in OCGA § 51-
12-33, is a word whose "ordinary signification" covers a wide spectrum of
conduct, including intentional conduct.  However, the General Assembly could
not have intended to include intentional conduct because to do so would conflict
with the common law, and preemption of the common law requires a clear
expression of that intent, something OCGA § 51-12-33 lacks.  At the time it
enacted OCGA § 51-12-33, the General Assembly was presumed to know of the
common-law prohibition of the use of intentional conduct in comparative
analysis of tort damages and to know that the common law remained in effect
unless the General Assembly stated otherwise.  There being no express statement
of an intent to preempt the common law and no language from which such a

14

necessary implication follows, I conclude that "fault," as used in OCGA § 51-12-33, does not include intentional conduct.   Accordingly, I   answer the first certified question in the negative - the jury is not allowed to consider the "fault" of the criminal assailant and apportion its award of damages among the property owner and the criminal assailant.[16]

---

[16]In closing, I must point out that if the General Assembly enacted this legislation with the belief that it would allow for the efficient and accurate determination by a jury of the respective responsibilities of all the tortfeasors liable for the harm caused a plaintiff, the case before us is a prime example of the statute's failure.  Because the unknown criminal assailants are not parties to this action, any apportionment of "fault" to them has no weight, as far as they are concerned – that apportionment serves only to diminish the apportionment of fault of the tortfeasors before the court.  OCGA § 51-12-33(f)(2) makes it clear that "[w]here fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence in any action."  Rather than an efficient and accurate determination of "responsibilities," the statutory scheme is inefficient and arbitrary.  Where, as here, there are known tortfeasors accused of negligence and unknown criminal assailants guilty of intentional conduct, the statutory scheme, according to the majority, has the jury decide the percentages of fault of the tortfeasors who are parties to the lawsuit by parceling out the "fault" of all involved, regardless of whether they are parties, with judgment entered only against those tortfeasors who are parties.  Should the unknown criminal assailants subsequently become known and subject to suit, a second jury will decide the percentage of fault of the criminal assailants by parceling out the "fault" of all involved, regardless of whether they are parties, with judgment entered only against the criminal assailants since they are the only tortfeasors who are parties in the second lawsuit.  Of course, should the multiple criminal assailants become known and subject to suit one at a time, there will be even more juries making a variety of apportionments of fault.  There is nothing that prevents the first jury from determining that the property owner/tortfeasor is five percent at "fault" and the absent criminal assailants 95 percent at fault, and the second jury from determining that the criminal assailants/tortfeasors are five percent at fault and the now-absent property owner ninety-five percent at fault.  Under such a scenario, the sum total is that the plaintiff, injured through no fault of his own, is required to pursue at least two lawsuits from which he collects the grand total of ten percent of the damages caused by the tortfeasors.  Such a realistic outcome is not efficient, is not accurate, and is not just.

15

Because this Court does not decide a constitutional question if a case can be decided upon other grounds (East Georgia Land and Dev. Co. v. Baker, 286 Ga. 551 (1) (690 SE2d 145) (2010)) and my approach resolves the case on non-constitutional grounds, because this Court may decline to answer a certified question (see CSX Transportation v. City of Garden City, 279 Ga. 655 (619 SE2d 597) (2005)), and because the constitutionality of § 51-12-33 was not ruled upon by the trial court (see Lawrence v. State, 268 Ga. 420 (489 SE2d 850) (1997)), I decline to express an opinion concerning the constitutionality of the statute.

I am authorized to state that Presiding Justice Hunstein joins this dissent.

16



CAROL W. HUNSTEIN, CHIEF JUSTICE
HUGH P. THOMPSON, PRESIDING JUSTICE
ROBERT BENHAM
P. HARRIS HINES
HAROLD D. MELTON
DAVID E. NAHMIAS
KEITH R. BLACKWELL
      JUSTICES

## Supreme Court
## State of Georgia

STATE JUDICIAL BUILDING
### Atlanta 30334

THÉRÈSE S. BARNES, CLERK
JEAN RUSKELL, REPORTER

## SUPREME COURT OF THE STATE OF GEORGIA
### CLERK'S OFFICE, ATLANTA

## July 24, 2012

     I hereby certify that the foregoing pages hereto attached contain a true and complete copy of the opinion of the Supreme Court of Georgia in the case therein stated, as appears from the original of file in this office.

                    Witness my signature and seal of the said Court

                    hereto affixed the day and year above written.



                                   _Clerk_